# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ERIK W. ANDERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>   vs.<br><br>SANTANDER CONSUMER USA, PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., and NCB MANAGEMENT SERVICES, INC.<br><br>        Defendants. | Case No.: 17-cv-12<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats., and Wisconsin common law.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Erik W. Anderson ("Anderson") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Anderson is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes, namely an automobile loan.

5. Anderson is a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that he engaged in a consumer credit transaction. Wis. Stat. § 421.301(10). An automobile loan

is, by definition, a "consumer credit transaction" under the WCA. *Id.* The amount financed in the loan transaction was less than $25,000.00.

6. Defendant Santander Consumer USA, Inc. ("Santander") is a foreign corporation with its principal place of business located at 8585 North Stemmons Freeway, 1100N, Dallas, Texas 75247.

7. According to Santander's website, Santander "is a full-service, technology-driven consumer finance company focused on vehicle finance and unsecured consumer lending products. The company, which began originating retail installment contracts in 1997, has a serviced portfolio of more than $40 billion (as of September 30, 2014), has more than two million customers across all credit grades, and is headquartered in Dallas."

8. With respect to Anderson and the class, Santander is engaged in the business of a collection agency, using the mails, telephone and legal actions to collect consumer debts.

9. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

10. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

11. The Western District of Wisconsin has also noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

12. Santander is in the business of collecting debts owed to itself or its predecessors in interest, incurred for personal, family or household purposes.

13. Defendant Professional Bureau of Collections of Maryland, Inc. ("PBCM") is a foreign corporation with its principal place of business located at 5295 DTC Parkway, Greenwood Village, CO, 80111.

14. PBCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

15. PBCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. PBCM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

16. Defendant NCB Management Services, Inc. ("NCB") is a foreign limited liability company with its principal place of business located at One Allied Drive, Trevose, PA 19053.

17. NCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

18. NCB is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. NCB is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Santander's State Court Replevin Lawsuits*

19. The case now before this court is a continuing chapter in a long-running dispute between Anderson and Santander over a 2006 Chevrolet Trailblazer.

20. On November 17, 2011, Santander brought an action for replevin against Anderson (the "2011 Action"), in a case styled as *Santander Consumer USA, Inc. v. Erik W.*

*Anderson*, Milwaukee County Case No.: 11-SC-034603. A copy of the complaint in the 2011 Action is attached as <u>Exhibit A</u>.

21. In the 2011 Action, Santander sought replevin under a motor vehicle purchase agreement for a 2006 Chevrolet Trailblazer, alleging a default of that agreement. The 2011 action was dismissed on January 11, 2012.

22. On March 1, 2012, Santander brought a similar action for replevin against Anderson (the "2012 Action"), in a case styled as: *Santander Consumer USA, Inc. v. Erik W. Anderson*, Milwaukee County Case No.: 12-SC-007550. A copy of the complaint in the 2012 Action is attached as <u>Exhibit B</u>.

23. The Complaint Santander filed in the 2012 Action was virtually identical to that filed in the 2011 Action.

24. In the 2012 Action, the parties filed cross motions for summary judgment. On August 6, 2012, on the day the Court had scheduled to hear oral arguments on the parties cross motions for summary judgment, the parties reached an agreed upon settlement with respect to all aspects of the 2012 Action.

25. These settlement terms were memorialized by a Stipulation and Order Dismissing Action filed with the Court on September 13, 2012 and the action was dismissed on that day. A copy of the Stipulation and Order is attached as <u>Exhibit C</u>.

26. Under the written and executed stipulation of the parties, the only rights retained by Santander relative to the claims in the 2012 Action were set forth in paragraph 6 of the Stipulation and Order for Dismissal, which provided as follows: "If Defendant [i.e. Anderson] fails to satisfy any of the requirements set forth above the Plaintiff, without notice to the Defendant, shall be entitled to file and Affidavit of Default with the Court, and the Court shall

4

Case 2:17-cv-00012-PP   Filed 01/03/17   Page 4 of 17   Document 1

reopen this matter and grant a replevin judgment for possession of said vehicle plus statutory costs."

27. The above-referenced Stipulation and Order, duly executed by both parties, resolved all aspects of the case, including paragraph 9 of the Complaint in the 2012 Action, which sought a judgment for any deficiency amounts after repossession and sale of the subject vehicle. Exhibit B at 5.

28. The parties negotiated the terms of the Stipulation and Order for Dismissal of Action. Santander could have negotiated to include its rights to deficiency amounts upon any breach of the Stipulation and Order for Dismissal of Action but it chose not to. Rather, the only rights reserved by Santander were for Santander's judgment of replevin for possession of the vehicle and for statutory costs.

29. On May 8, 2013, Santander filed its Affidavit of Default and Replevin Judgment. A copy of the Affidavit of Default is attached as Exhibit D. As stated in its Affidavit, Santander sought a judgment of replevin of the subject vehicle, plus statutory costs in the amount of $297.50. Similarly, on the Judgment of Replevin signed by the Court (a copy of which is attached as Exhibit E), the only rights afforded to Santander were for possession of the vehicle and for statutory costs in the amount of $297.50.

30. Neither the Affidavit of Default, nor the Replevin Judgment sought any deficiency judgment. Exhibits D, E. This is intuitive as that claim had been resolved by the September 13, 2012 Stipulation and Order Dismissing Action (Exhibit C), which only preserved for Santander possession of the vehicle and statutory costs.

31. On January 20, 2015, Santander filed another action seeking a deficiency judgment on the same vehicle as in the 2011 and 2012 actions. *Santander Consumer USA, Inc. v.*

*Erik W. Anderson*, Milwaukee County Case No.: 15-SC-001388 (the "2015 Action"). A copy of the complaint in the 2015 Action is attached as Exhibit F.

32. In its Complaint, Santander alleged the existence of the same motor vehicle purchase agreement that was the subject of the 2011 and 2012 cases. *Id.* Santander made the same allegations of Anderson's default of that purchase contract that it made in the 2011 and 2012 Actions. *Id.* Santander went on to allege that it "regained possession of the motor vehicle and, pursuant to applicable law, sold it in a commercially reasonable manner." Following these allegations, Santander alleged that it "applied the proceeds of the commercially reasonable sale, which totaled $6,000.00, to the Contract balance. After applying the sale proceeds to the unpaid Contract balance of $19,792.60, plus allowable expenses of disposition and late charges of $758.50, there is a principal balance due and owing in the amount of $9,704.60."

33. Thus, in the 2015 action, Santander was seeking a deficiency judgment on the original purchase agreement in this case. But that claim had been resolved by virtue of the Stipulation and Order Dismissing the 2012 Action. Exhibit C.

34. In the 2015 action, Anderson moved for summary judgment on grounds that Santander's deficiency judgment claims were barred by the doctrine of claim preclusion or *Res Judicata* or alternatively, by the doctrine of issue preclusion.

35. On June 10, 2015, the Court granted Anderson's motion for summary judgment on grounds that Santander's claim was barred by issue preclusion. A copy of the transcript of the hearing in which the Court granted summary judgment to Anderson is attached as Exhibit G. The Wisconsin Circuit Court Access ("CCAP") record for the 2015 Action is attached as Exhibit H.

36. Santander did not appeal the judgment in the 2015 Action or seek reconsideration. Exhibit H. Wis. Stat. § 808.04(1).

37. Despite the judgment of the court, Santander continued to attempt to collect a deficiency on the same vehicle contract by hiring debt collectors. Each debt collector asserted that Anderson still owed a deficiency to Santander on the Trailblazer contract.

### *PBCM Debt Collection*

38. On or about January 15, 2016, PBCM mailed a debt collection letter to Anderson regarding the same alleged Santander debt, A copy of this letter is attached to this complaint as Exhibit I.

39. Upon information and belief, Exhibit I is a form letter, generated by computer, and with the information specific to Anderson inserted by computer.

40. Upon information and belief, Exhibit I is a form debt collection letter used by PBCM to attempt to collect alleged debts.

41. Exhibit I contains the following text:

**30% SETTLEMENT OFFER**

We have been authorized by our client Santander Consumer USA to offer you an opportunity to pay less than the amount due. This settlement as offered shall be in the amount of 30% of the balance.

This settlement offer will expire unless we receive your payment of $2,963.97 due in our office on or before 01/29/2016.

Exhibit I.

42. The letter purports to offer a settlement for 30% of the total alleged debt.

43. The settlement offer in Exhibit I falsely states or implies that the settlement offer is valid only if payment is received "in our [PBCM's] office on or before 01/29/2016."

44. Upon information and belief, PBCM had authority from the creditor to settle consumers' accounts for 30% of the amount owed, or less, at any time.

45. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

7

46.     Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

47.     The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

48.     PBCM did not use the safe harbor language in Exhibit I.

49.     Upon information and belief, the deadline in Exhibit I to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

50.     Further, at the time PBCM mailed Exhibit I to Anderson, Anderson did not owe the alleged Santander debt.

51.     At the time Santander engaged PBCM to collect the alleged Santander debt, Santander knew that the debt was not owed.

52.     PBCM's representation that Anderson owed a debt to Santander was a false and misleading representation.

### *NCB Debt Collection*

53.     On or around February 29, 2016, NCB mailed a debt collection letter to Anderson regarding the same alleged Santander debt. A copy of this letter is attached as Exhibit J.

54. At the time NCB mailed <u>Exhibit J</u> to Anderson, Anderson did not owe the alleged Santander debt.

55. At the time Santander engaged NCB to collect the alleged Santander debt, Santander knew that the debt was not owed.

56. NCB's representation that Anderson owed a debt to Santander was a false and misleading representation.

57. Anderson was confused by <u>Exhibits I and J</u>. Santander, PBCM and NCB were continuing to collect a debt that Anderson did not owe, despite the court judgment in Anderson's favor.

58. Moreover, until Anderson disputed the debt with consumer reporting agencies ("CRAs") in November 2016, Santander was also reporting the Santander debt as valid and charged off with the three major CRAs, TransUnion, Experian and Equifax.

59. Anderson suffered significant actual damages as a result of Santander's actions.

60. Anderson paid attorneys' fees to his attorney, George Peek of Crivello Carlson, S.C., in defense of Santander's deficiency claim in the 2015 Action. Santander should never have brought the 2015 Action, as Anderson and Santander had resolved all claims in the 2012 Action.

61. Anderson also lost wages due to his participation in defense of the 2015 Action. This includes Anderson having to appear in Court at the hearing on summary judgment on June 10, 2015, in case his testimony was required, and preparation prior to the hearing.

62. Anderson purchased a Harley Davidson motorcycle on or around May 4, 2013.

63. Because Santander was reporting the alleged deficiency, which the court had denied, as owed and charged off, Anderson's wife was required to co-sign the loan.

64. Additionally, as a result of Santander's actions, Anderson and his wife were charged an inflated interest rate of 9.99 percent on the motorcycle purchase loan.

9

65. If Santander had been reporting the loan correctly, i.e. as having a zero balance since the Replevin Judgment was entered (Exhibit E), rather than Santander's asserted deficiency balance, Anderson's "credit scores" would have been higher, he would have qualified for a lower rate and his wife would not have been required to co-sign the loan.

66. Similarly, on October 18, 2014, Anderson was not permitted to co-sign a loan with his spouse to purchase a 2009 GMC Sierra 1500 vehicle. As a result, Anderson and his wife paid interest at an inflated rate.

67. Anderson was also required to pay an inflated interest rate on a lease-to-own agreement to purchase a semi tractor.

68. Anderson suffered emotional distress as a result of Santander's continued efforts to collect a deficiency after the claim was settled and after Santander had lost in court on the same claim.

### *The FDCPA*

69. The FDCPA prohibits debt collectors from, among other things, collecting debts that are not owed.

70. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

71. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

72. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

73. 15 U.S.C. § 1692f(1) specifically prohibits: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

10

74. PBCM and NCB, at Santander's behest, sent Exhibits I and J to Anderson after the subject debt was resolved by stipulation and the Replevin Judgment and after Anderson had subsequently proven in court that the alleged Santander debt was not owed. Exhibits E, G.

75. Anderson had to spend time and money investigating Exhibits I and J, and the consequences of any potential responses to Exhibits I and J.

76. Anderson had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits I and J.

77. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

11

78. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

### ***The Wisconsin Consumer Act***

79. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

80. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

81. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

82. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

83. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

84. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

85. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. While the Seventh Circuit has not squarely interpreted how WCA cases based upon the content of debt collection letters should be determined, federal courts in this District and the state courts in Wisconsin generally look to FDCPA case law for guidance. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

86. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

87. Chapter 427, Wis. Stats., governs debt collection activities in Wisconsin.

88. Wis. Stat. § 427.104(1)(c) states that a debt collector may not: "Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

89. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FDCPA

90. Anderson incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Count I is brought against defendant PBCM.

92. Exhibit A includes false statements to the effect that the settlement offer payment must be received by a specific date.

93. Upon information and belief, the creditor and/or PBCM would settle Anderson's and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

94. PBCM violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II -- FDCPA

95. Anderson incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. Count II is brought against defendants PBCM and NCB.

97. PBCM and NCB attempted to collect a debt that Plaintiff did not actually owe.

98. PBCM and NCB violated 15 U.S.C. §§ 1692e, 1692e(10),1692f and 1692f(1).

## COUNT III – WCA

99. Anderson incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

100. Count III is brought against all defendants.

101. Santander's continued attempts to collect the alleged Santander debt were attempts and threats to enforce a right to payment of the alleged deficiency, even though Santander knew or should have had reason to know that no such right existed at the time it engaged PBCM and NCB to collect the alleged debt, as it had settled the deficiency claim in the 2012 Action.

102. <u>Exhibits F-J</u> claim, attempt, or threaten to enforce a right to payment, even though Defendants knew or should have had reason to know that no such right existed at the time the letters were sent.

103. Santander reported the alleged debt to CRAs as a valid debt that had been charged off, after the debt had been resolved by stipulation and the replevin judgment, and after summary judgment was granted to Anderson in court on the deficiency claim.

104. As a result of Santander's actions, Plaintiff suffered actual damages.

105. Defendants violated Wis. Stat. §§ 427.104(1)(c) and 427.104(1)(j).

## COUNT IV -- INJUNCTIVE AND DECLARATORY RELIEF

106. Anderson incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107. Count IV is brought against defendant Santander.

108. As set forth above, Santander has intentionally misrepresented that Anderson owes a debt that he does not owe.

109. Santander has continued to harass Anderson with collection efforts after Santander's claims relating to the Trailblazer loan were resolved by stipulation and after Santander's deficiency action was dismissed on summary judgment in court.

110. Santander's practices described herein are unlawful and against public policy, and therefore, Santander should be prohibited and enjoined from engaging in these practices in the future and should be compelled to correct the harm caused by their conduct.

## CLASS ALLEGATIONS

111. Anderson brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits I or J to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes allegedly owed to Santander, (d) after judgment was entered against Santander on the same debt, (e) between January 3, 2016 and January 3, 2017, inclusive, (f) that was not returned by the postal service.

112. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

113. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with 15 U.S.C. §§ 1692e, 1692e(10), 1692f, Wis. Stat. § 427.104(1) and common law.

114. Anderson's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

115. Anderson will fairly and adequately represent the interests of the Class members. Anderson has retained counsel experienced in consumer credit and debt collection abuse cases.

116. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

117. Anderson hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Anderson requests that the Court enter judgment in favor of Anderson and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: January 3, 2017

                                                **ADEMI & O'REILLY, LLP**

By:    s/ John D. Blythin
          Shpetim Ademi (SBN 1026973)
          John D. Blythin (SBN 1046105)
          Mark A. Eldridge (SBN 1089944)
          3620 East Layton Avenue
          Cudahy, WI 53110
          (414) 482-8000
          (414) 482-8001 (fax)
          sademi@ademilaw.com
          jblythin@ademilaw.com
          meldridge@ademilaw.com